IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JUL 0 7 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 1:25 CR 00327 |
| JOHN E. BROWN II, | ) | Title 18, United States Code, Sections 1343, 1957, and 2 |
| Defendant. | ) | |

JUDGE POLSTER

GENERAL ALLEGATIONS

At all times relevant to this Information, unless otherwise specified:

1. Defendant JOHN E. BROWN II resided in or around Brecksville, Ohio, in the Northern District of Ohio.

2. Elite Holdings 21, LLC ("Elite Holdings") was an entity Defendant owned and operated.

3. Victim 1, Victim 2, and Victim 3 resided in the Northern District of Ohio, Eastern Division. Victim 4 and Victim 5 resided in Florida.

4. Bank 1 was a federally insured financial institution based in or around New York, New York. Defendant maintained a Bank 1 business checking account in the name of Elite Holdings ending in x1312 (the "Elite Holdings Bank 1 Account").

5. Bank 2 was a federally insured financial institution based in or around Providence, Rhode Island. Defendant maintained two Bank 2 accounts in the name of Elite Holdings:

      a.    a business checking account ending in x7816 (the "Elite Holdings Bank 2 Account 1"); and

      b.    a business checking account ending in x8872 (the "Elite Holdings Bank 2 Account 2").

6.    Bank 3 was a federally insured financial institution based in or around Cleveland, Ohio. Victim 1 maintained checking accounts at Bank 3.

7.    Bank 4 was a federally insured financial institution based in or around Minneapolis, Minnesota. Victim 2 maintained a checking account at Bank 4.

8.    Bank 5 was a federally insured financial institution based in or around Columbus, Ohio. Victim 3 maintained checking and savings accounts at Bank 5.

9.    Bank 6 was a federally insured financial institution based in or around Charlotte, North Carolina. Victim 4 maintained checking accounts at Bank 6.

10.    Bank 7 was a federally insured financial institution based in or around San Francisco, California. Victim 5 maintained a checking account at Bank 7.

COUNTS 1 – 17
(Wire Fraud, 18 U.S.C. §§ 1343 and 2)

The Acting United Staes Attorney charges:

11.    The factual allegations contained in paragraphs 1 through 10 of this Information are incorporated by reference as if stated fully herein.

The Scheme to Defraud

12.    From in or around May 2020, through in or around May 2024, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JOHN E. BROWN II devised and intended to devise a scheme and artifice to defraud Victim 1, Victim 2, Victim 3, Victim 4,

Victim 5, and other persons (collectively, "Victims") and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

## Purposes of the Scheme

13. The purposes of the scheme included, but were not limited to, the following: for Defendant to unjustly enrich himself and his designees by (a) obtaining funds from Victims through false statements, (b) diverting proceeds for Defendant's use and the use and benefit of others and to further the scheme, and (c) concealing the scheme to defraud.

## Manner and Means of the Scheme

14. It was part of the scheme that:

   a. Defendant presented Victims with an investment opportunity he called "rolling code ticket packages," which, according to Defendant, were bundled admission tickets to experiences, such as sporting events or theme parks, when, in fact, the rolling code ticket packages either did not exist or were otherwise fraudulent. Defendant caused Victims to transfer approximately $3,359,750 to Elite Holdings in purported investments in rolling code ticket packages.

   b. Defendant, based on misrepresentations of material facts, convinced Victims that:

      i. the rolling code ticket packages fluctuated in price based on a variety of factors, such as the stock price of the theme parks and the success of the professional sport teams associated with the tickets;

      ii. the rolling code ticket packages would frequently "split," which doubled the tickets in a package, making it more valuable;

      iii. Defendant could generate profits by trading rolling code ticket packages, based on his ability to take advantage of increases in their value.

3

  c. Defendant caused other individuals to portray themselves as investors in rolling code ticket packages to further convince Victims of the validity of the packages as an investment so that they would invest funds with Defendant, when, in fact, those individuals had not purchased rolling code ticket packages.

  d. Defendant caused other individuals to portray themselves as "code" buyers to further convince Victims to invest with him, when, in fact, those other individuals had not purchased "codes."

  e. Defendant convinced certain Victims that the rolling code ticket packages were insured to make them more comfortable with investment, when, in fact, they were not insured.

  f. After receiving Victims' invested funds, Defendant did not purchase rolling code ticket packages as represented; he instead spent Victims' funds for the benefit of himself and others, including gambling the invested funds at casinos, and spent Victims' finds to perpetuate the scheme, including using funds received from a Victim to repay a portion of an earlier Victim's investment.

  g. Defendant falsely assured Victims that their money had been invested in rolling code ticket packages.

  h. When Victims questioned Defendant about a lack investment return, Defendant made additional false representations about the status of their investments and provided them counterfeit documents to support his misrepresentations and give false assurance that their funds had been invested as represented.

Acts in Furtherance of the Scheme

15. In furtherance of the scheme, and to accomplish its purposes and conceal the existence thereof, Defendants committed and caused to be committed, in the Northern District of Ohio, and elsewhere, the following acts, among others:

16. Defendant caused victims to transfer funds to accounts Defendant controlled, committing the acts alleged in Counts 1 through 18 of this Information, each of which is incorporated by reference as an act in furtherance of the scheme.

17. On or about June 18, 2020, shortly after receiving a $250,000 investment from Victim 1, Defendant caused a wire to be issued to Casino 1 for $200,000 using Victim 1's investment funds.

18. On or about November 4, 2020, shortly after receiving a $350,000 investment from Victim 3, Defendant caused a cashier's check to be issued to Casino 1 for $350,000 using Victim 3's investment funds.

19. On or about July 7, 2021, shortly after receiving a $402,750 investment from Victim 3, Defendant loaned Business 1 $350,000 and funded the loan with Victim 3's investment funds.

20. On or about May 5, 2022, shortly after receiving a $320,000 investment from Victim 4, Defendant caused a cashier's check to be issued to Casino 1 for $300,000 using Victim 4's investment funds.

21. On or about November 2, 2022, shortly after receiving a $609,000 investment from Victim 2, Defendant loaned Business 2 $609,000 and funded the loan with Victim 2's investment funds.

22. On or about March 28, 2024, shortly after receiving a $500,000 investment from Victim 5, Defendant caused a cashier's check to be issued to Casino 2 for $75,000 using Victim 5's investment funds.

23. On or about April 26, 2024, shortly after receiving a $275,000 investment from Victim 5, Defendant caused a wire to be issued to Victim 1 for $240,000 using Victim 5's investment funds.

Execution of the Scheme

24. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JOHN E. BROWN II, for the purpose of executing the foregoing scheme and artifice to defraud, and attempting to do so, knowingly caused to be transmitted the following writings, signs, signals, pictures, and sounds by means of wire communications in interstate commerce, to wit, Defendant caused Victim 1, Victim 2, Victim 3, Victim 4, and Victim 5, as identified below, to conduct the following wire transfers from their bank accounts to bank accounts controlled by Defendant as detailed below, each transmission routed across state lines, each transmission constituting a separate count of this Information:

| Count | Date | Victim | Amount | Defendant's Bank Account |
|---|---|---|---|---|
| 1 | May 22, 2020 | 1 | $250,000 | Elite Holdings Bank 1 Account |
| 2 | June 17, 2020 | 1 | $100,000 | Elite Holdings Bank 1 Account |
| 3 | July 7, 2020 | 1 | $100,000 | Elite Holdings Bank 1 Account |
| 4 | October 30, 2020 | 3 | $190,000 | Elite Holdings Bank 1 Account |
| 5 | November 3, 2020 | 3 | $60,000 | Elite Holdings Bank 1 Account |

6

| Count | Date | Victim | Amount | Defendant's Bank Account |
|---|---|---|---|---|
| 6 | November 3, 2020 | 3 | $50,000 | Elite Holdings Bank 1 Account |
| 7 | November 3, 2020 | 3 | $50,000 | Elite Holdings Bank 1 Account |
| 8 | January 22, 2021 | 1 | $150,000 | Elite Holdings Bank 1 Account |
| 9 | June 2, 2021 | 3 | $135,000 | Elite Holdings Bank 1 Account |
| 10 | July 7, 2021 | 3 | $400,000 | Elite Holdings Bank 1 Account |
| 11 | December 1, 2021 | 3 | $88,000 | Elite Holdings Bank 2 Account 1 |
| 12 | May 4, 2022 | 4 | $312,000 | Elite Holdings Bank 2 Account 2 |
| 13 | May 5, 2022 | 4 | $8,000 | Elite Holdings Bank 2 Account 1 |
| 14 | May 9, 2022 | 4 | $5,000 | Elite Holdings Bank 2 Account 2 |
| 15 | November 11, 2022 | 2 | $609,000 | Elite Holdings Bank 2 Account 1 |
| 16 | February 20, 2024 | 5 | $500,000 | Elite Holdings Bank 2 Account 1 |
| 17 | April 26, 2024 | 5 | $275,000 | Elite Holdings Bank 2 Account 1 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS 18 – 19
(Engaging in a Monetary Transaction in Criminal Proceeds, 18 U.S.C. §§ 1957 and 2)

The Acting United Staes Attorney further charges:

25. The factual allegations contained in Counts 1 through 17 of this Information are incorporated by reference as if stated fully herein.

26. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JOHN E. BROWN II, did knowingly engage and attempt to engage in the following monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Section 1343, each transaction constituting a separate count of this Information:

| Count | Date | Amount | Account | Transaction Description |
|---|---|---|---|---|
| 18 | November 4, 2020 | $350,000 | Elite Holdings Bank 1 Account | Defendant tendered a cashier's check to Casino 1 using Victim 3's rolling code ticket package investment |
| 19 | July 7, 2021 | $50,000 | Elite Holdings Bank 1 Account | Defendant tendered a cashier's check to Casino 1 using Victim 3's rolling code ticket package investment |

All in violation of Title 18, United States Code, Sections 1957 and 2.

CAROL M. SKUTNIK
Acting United States Attorney

By: *[signature]*

Elliot Morrison, Chief
White Collar Crimes Unit

8